Spirit Airlines v. Maizes Good morning, Your Honors. May it please the Court, with me, Erwin Gilbert, for the Daniel Graham of Chicago, who had contributed substantially to our efforts in this appeal. Your Honors, I invite you first to examine the failure of the District Court to resolve factual disputes regarding the construction of the underlying contract between Spirit Airlines and those people who signed up for the $9 fare club discount program. The District Court, although in a prefatory paragraph, acknowledges that there were facts, disputing facts, makes no analysis and makes no findings of those facts. I think the Court was bound to apply a Rule 56 standard to the resolution of those facts. It's particularly important because the exercise here involves construing whether or not this arbitrator delegated to the arbitrator to decide the issue of arbitrability and whether or not the agreement could possibly be construed to permit class arbitration. There has to be consent. All right, so the parties incorporated the rules of the association. Of the AAA. Yes, Your Honor. I don't understand why that doesn't resolve basically everything. The supplementary rules provide that any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the association and that the arbitrator shall determine as a threshold matter whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class. If they've agreed to the rules, then it seems to me they've agreed that the arbitrator is going to decide this as a question of arbitrability. I assume at some risk that Your Honor would agree if it was otherwise plain in this contract that class arbitration was not agreed to. It was not specifically, clearly or unmistakably agreed to. You would be much less concerned. In fact, you would disregard that beginning paragraph in Section 3 that suggests that the arbitrator would resolve. So if Your Honor would permit, if you'd patience for one more sentence, Your Honor has to read the last paragraph of Rule 3. Because you cannot reconcile the arguments that are made either by Judge Bloom or in those minority of circuits that have said that reference to the rules is sufficient. If you read the last paragraph of Rule 3, which says, in construing the applicable arbitration clause, meaning whether or not the supplemental rules for class action would apply, the arbitrator shall not consider the existence of these supplementary rules or any other AAA rules to be a factor either in favor of or against permitting the arbitration to proceed on a class basis. But that contemplates that it's the arbitrator who's going to decide this. Right. And so if I take you back one sentence, it seems to me that if the agreement itself is silent, you cannot solve the problem by an incorporation generally, generically of the AAA rules. If the AAA rules themselves say, ignore these rules. And I think, and I have to say, Your Honors, I don't read that analysis. I have not seen other circuit courts talk about the last paragraph. And I wonder sometimes in my career how it is sometimes the most obvious things are not discussed by courts. But here, and where I had hoped to begin in my presentation, so I think you have to begin with the language of the contract itself before you go off the pages of the contract and begin examining the AAA rules. And the contract itself presents some contradictory provisions in the use of the singular versus the plural with respect to party or disputes or the singular state in referring to what disputes will be arbitrated. There is a substantial number of factual disputes that required the court to apply the Rule 56 standard in construing this contract. This contract specifically incorporates Florida law. And there are two important elements to that. In Clark versus Clark, the Florida Supreme Court set forth the process by which contracts in Florida are construed. And among other things, and I'd urge the court to consider the entire language in Clark, but among other things, the Florida Supreme Court said you have to consider the surrounding circumstances in order to understand the context of what the parties have agreed to, to suggest in this case, nothing more than a generic reference to AAA, that Spirit Airlines contemplated giving up virtually all of its substantive legal rights, particularly the right to have a court review the findings of the arbitrator on substantive grounds. In effect, betting the company with language that is this casual and with respect, language that is silent. But Florida law also includes the Florida Arbitration Code, which specifically reserves to the courts the resolution of whether the parties have delegated to the arbitrator the determination as to what is arbitrable. Why would a generic reference to the AAA rules carry more weight and be more persuasive to this court than the incorporation of Florida law, which clearly, specifically, takes us to a different place? And respectfully, it should not. It seems to me that you're conflating two different problems. Who should decide with whether there's class arbitration under the agreement? Those are two different things. It seems to me the Sixth Circuit misunderstood the difference. And the question here, it seems to me, is does this contract reserve that question to the arbitrator or not? And we, you know, if you follow our precedents about what is for the arbitrator to decide, this seems to fall within them. I'd submit that there really is not precedent in the Eleventh Circuit. Not on class action waivers. Well, Terminex was not a class action case. Not on class action arbitration. U.S. Nutraceuticals was not a class action case. But we've said incorporating the rules allows the arbitrator to decide the questions of arbitrability, right? You have said that in a different context. I don't understand why this would be different. Why wouldn't it be up to the arbitrator to decide? As opposed to whether the agreement allows for it or not. Two different things. So let's think about Terminex and U.S. Nutraceuticals. In that context, you're not analyzing the AAA rules in full context in order to determine whether class action is available. You're simply saying in a more generic type of arbitration dispute, we're going to allow the arbitrators to decide because that's how we construe this agreement. Here, as I've read to the court, the AAA says don't do that. The AAA wouldn't do it. The AAA is telling this court not to do it. See, I don't see where that's what the rules are saying. The rules, in fact, contemplate that the arbitrator is going to be the decision maker. It's just not that the availability of the rules means that they've agreed to class arbitration. It seems to me you're making the same conflation there that I think the Sixth Circuit did. Well, the Sixth Circuit was in very good company, if Your Honor considers the number of circuits that agreed. I have precious little time on my direct appeal. I want to call the court's attention, and hopefully I will further on reply. Class arbitration is not arbitration at all. Stolt-Nielsen and Concepcion. But it's a dispute, isn't it? It is a dispute, but Stolt-Nielsen. And your agreement says any dispute. But Stolt-Nielsen and Concepcion plainly say, and this is the Sixth Circuit, the Third Circuit, the Eighth Circuit, perhaps projecting how the court would address this issue because it's only in the Opalinsky case that the matter came up to the U.S. Supreme Court on a petition for cert in the posture where they said, no, this will not be a class arbitration, and the court denied cert. And you may or may not choose to read considerably into the court's decision not to grant cert. But class arbitration is not arbitration. And an analysis as to whether or not it's been consented to has to be influenced, if not controlled, by Stolt and Concepcion. I reserve the rest of my time to her. Thank you. Mr. Cooper? Good morning, Your Honors. First, I'd like to respond to Mr. Gilbert's reliance on the last paragraph of Section 3 of the supplementary class rules. And as you correctly pointed out, Your Honor, that was actually mentioned in the Sixth Circuit. That was the Reed v. Elsevier case. And the only issue in front of that court was whether a class should proceed. The issue of who decides was not in front of the Reed case. And in fact, Judge Gloom, in her footnote 8, actually quotes that particular language and says it doesn't apply to the decision as to who decides whether a class arbitration goes forward. In preparing for the oral argument, I noticed on the calendar that there was an oral argument on June 29th for a case called JPEI. And that is actually one of the cases that's cited by Judge Gloom. And it's actually cited in the briefs. And I listened to the oral argument. And Judge Marcus brought up the Terminex case and suggested to counsel for JPEI that that was actually binding the Eleventh Circuit precedent. And this is a 2005 decision by Judge Choflat. The fact that the arbitration clause referred to the AAA rules indicated that the parties had clearly and unmistakably agreed that the arbitrator would decide arbitrable issues. In that case, it had to do with whether the agreement was valid or not. And I submit that that issue has been decided. They included in their clause the reference to the AAA rules. If you looked at the commercial rules, Rule 7 now... Back then, when Judge Choflat ruled, it was Rule 8A. But Rule 7 defines the arbitrator's jurisdiction, gives him the power to find his own jurisdiction, gives him the power to decide whether the clause is valid, what the scope and breadth is of the clause. But in addition, what Judge Bloom did was she also located the supplementary class rules, which are specific to class arbitration. Section 1 says it applies to all of the AAA rules by some language. When you look at Section 3, it also, as Judge Pryor pointed out, it states that the arbitrator specifically decides whether class arbitration is allowed. It may be that the arbitrator will decide that the agreement doesn't provide for class arbitration. That's exactly right, Your Honor. That's a different question from who gets to decide. That's right. I want to also just correct the record. In their reply brief, they said, well, there's no contract claim. What is this? This claim doesn't make any sense. I'd like to give you an analogy, I think, that explains it. We have a real claim here. This isn't some fantasy claim. If you were to rent a house for a year, and the landlord says you've got to pay one year in advance, and it's non-refundable, and that it is going to automatically renew every year unless we get notice, and when you give notice, or if you don't give notice by that year, they withdraw another whole year out of your checking account, and it's non-refundable. So you've got to make sure you give notice before the one-year anniversary. But here what happens is if you give notice, say, three months before the one-year anniversary, you're evicted from the premises. They don't tell you that. If you give it one month before the one-year anniversary, according to them, all of your prepaid benefits are gone. You're evicted. You have to leave. And that is what we're saying. If that's going to happen, it's got to be in the contract. You don't have that power to unilaterally decide that you are going to take or cause a forfeiture of our prepaid benefits. Now, let's just look at some of the cases they cite. We already talked about Reed v. Elsevier, but that didn't deal with the issue of who. That dealt with the second question of whether a class arbitration may proceed. But the second case that comes up is a Third Circuit case, and that's the Chesapeake case. And that is a badly flawed decision. It's a case where I counted no less than nine times where the Third Circuit talks about when you interpret the AAA rules and whether there's a clearly and unmistakably an agreement, where it imposes an onerous burden at least nine times. And that doesn't come from any Supreme Court decision. That comes from another Third Circuit case. And what they want to do is somehow that that can get grafted onto the Eleventh Circuit, and that's just not consistent with what Terminex has said. In addition, in the case, they talk about how if there's any ambiguity, and again, there's no ambiguity here, but they say if there's any ambiguity, it is read against the non-drafter. In every state I've been around, in Florida, if there's any ambiguity, it goes against the drafter. And so I'm just pointing this out that there's been this creep from this bad decision where it's gone over into these other circuits. If you look at the other two cases, they cite the Del Webb case. There's no mention or discussion of the supplementary class rules at all. It's almost as if they didn't exist. And the same thing is true with respect to the Catamaran case. No mention or discussion of the supplementary rules. So I would submit that this, quote-unquote, majority of Circuit cases is not out there. And what we and what our judge did, her opinion is sound, it's reasonable. She read the supplementary class rules. It says what it says. I think a first-year law student could read those, or even a layperson, read it and realize, OK, this is what it says. They were put on notice in 2005 when Terminex came out about how you draft this. Because when you put in the AAA rules, this is what you get. You have it delegated by agreement to the arbitrator all the issues of arbitrability. And they knew that when they drafted this agreement. And it is an aspiration, Judge. So if you have any questions, I would welcome answering them. Thank you, Mr. Cooper. Thank you. I understand your case. Mr. Gilbert, you have five minutes. I'd like to point out the importance, the difference in procedural posture. If in the other circuits, the five circuits that address this matter, and found that reference to the AAA rules was not clear and unmistakable evidence of consent, either to delegate arbitrability or to consent to class arbitrability. If this court says, no, we're going to affirm Judge Bloom, we're going to be before an arbitrator who's going to have an opportunity, however that arbitrator elects to, to construe the contract. Procedurally, the protections afforded by Spirit Airlines and the nature of the review that any court might make of that arbitrator's decision is profoundly different. In fact, this is a situation in which as long as the arbitrator goes to the trouble of making some effort showing in a decision how the contract was construed, this court has already said, it won't revisit, won't second guess the construction no matter how bad. That's the difference between arbitration and having access to the courts to resolve this issue. Spirit Airlines does not delegate the gateway issue in the contract. Many arbitration agreements specifically state that the arbitrator shall decide disagreements with respect to the scope of arbitration or words to that effect. This contract does not. This contract incorporates Florida law, which in effect does the opposite. The Florida Arbitration Code specifically expressly reserves to the court the resolution of a dispute between the parties as to whether or not a particular type of dispute falls within the scope of the arbitration clause. Weight has to be given to the selection of law. And a careful review of the contract for evidence as to how it should be construed is required here. And Judge Martin, you addressed this issue generally in 2015 in the cash call case. You went to the trouble in your decision to spell out the burden, the obligation that the court has to carefully examine all of these elements of the contract. For my colleague to say in his argument, well, if there were ambiguities, it doesn't matter because ambiguities are resolved in favor of the party in a contract of adhesion who had to accept it or get no benefit. That's acknowledging that there were ambiguities. You can't just skip to what the consequence of those ambiguities are by saying that they're construed against the draftsman. You'd have to consider what those factual contradictions are within the body of the contract in order to determine whether there is clear and unmistakable evidence. Judge Bloom did not do that. She skipped over it and she elevated the reference to the AAA rules to constitute a term of the contract upon which she could proverbially hang her hat. I don't believe that's correct. I think that was error. I asked this court to return this case to Judge Bloom to decide based on Rule 56 how this contract was construed based upon all of those facts that we find within this contract. I urge this court to be guided not merely by the Circuit Courts of Appeal that have done so but the Supreme Court's rationale in Stolt-Nielsen and Concepcion. We do not get confidentiality in arbitration. We don't get an expedited process. In fact, I believe it was in Stolt-Nielsen. There's an analysis by the court of how few cases that are class action cases in the AAA are ever decided on their merits after years of being pending. And most important of all, we do not get the benefit of a court reviewing whether or not a class is correctly certified or not. We don't get the benefit of the court reviewing by its ordinary standards whether the arbitrator made significant errors in applying the facts and applying the law. Stolt-Nielsen and Concepcion essentially tell us that class arbitration is not arbitration at all. It's the wrong noun. You should come up with a different name. And if you're going to do that, then you're not guided by cases like Terminex that dealt with garden variety arbitration. A completely different creature requires a different application of the rules. And I am just out of time. Thank you, Judge. Thank you, Mr. Governor. We will be in recess until tomorrow morning.